William E. Shrum v. Commissioner.
Shrum v. Commissioner
Docket No. 26691.
United States Tax Court
1951 Tax Ct. Memo LEXIS 256; 10 T.C.M. (CCH) 420; T.C.M. (RIA) 51136; April 24, 1951
*256 Donald R. Mote, Esq., Box 86, North Manchester, Ind., and Edgar Rogers, Esq., for the petitioner. Hugh F. Culverhouse, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in petitioner's income tax for the calendar years 1943, 1944 and 1945 in the respective amounts of $60.96, $442.34, and $13,212.36. The principal question for decision is whether, in these years, petitioner and his wife were business partners for tax purposes. Findings of Fact Petitioner is an individual residing at Mishawaka, Indiana. His income tax returns for the calendar years 1943, 1944 and 1945 were filed with the collector of internal revenue for the district of Indiana. Petitioner and his wife, Lena, were married in 1932. They have three children, born in 1933, 1935, and 1941. During 1944 and 1945 two of the children were at school away from home. From 1932 through 1936, petitioner worked in a furniture factory at North Manchester, Indiana. He was also incidentally engaged in farming and raised chickens and hogs and kept some cows on the land on which he and Lena lived, Lena taking substantial part in this activity. In *257 1937 he was employed as an assistant foreman of upholstering by a furniture factory at Mishawaka, Indiana. Thereafter he worked for Studebaker Corporation as a "sample upholsterer". Shortly after 1937 petitioner started a custom furniture shop, in the basement of his home, in partnership with L. V. Hunter. At the outset, petitioner worked only part-time in this business, and Lena helped with it. But shortly before 1942 he quit his job with Studebaker, and devoted his full time to it. In May 1942 Hunter bought out petitioner's interest for more than $400, and the gain from the sale was reported by petitioner in his income tax return for the calendar year 1942. Several weeks after the furniture business was sold in 1942, petitioner accepted employment with a friend, Rufus C. Kauffman, who was engaged in the automobile trailer sales and service business. Petitioner started by managing a branch at Buchanan, Michigan; thereafter he took over the entire management of the Kauffman business and moved to the Kauffman trailer park at South Bend, Indiana. On January 21, 1943, an agreement between Kauffman and petitioner was executed, selling to petitioner all right, title, and interest in *258 the business known as "Kauffman Trailer Sales" and in certain permits and franchises for a consideration of $2,250. The agreement was signed only by Kauffman, the seller, and petitioner. Although the agreement authorized continued use of the business name "Kauffman Trailer Sales" for the duration of the war, the name of the business was in fact changed in July 1943 to "Shrum Trailer Sales". The money used to purchase the trailer business came in part from the proceeds of the sale of a residence owned in the names of both petitioner and Lena, and in part from property or funds inherited by Lena from an aunt in or about 1942. This inheritance was also used to buy a trailer for about $1,400. Petitioner and his family lived in this trailer, located at the Kauffman trailer park site, and it was later sold in the course of the trailer business. It was a common practice, during the years here in question, for petitioner and Lena to use a trailer coach both as home and business office for a while, and then to sell the trailer, thereafter using another trailer in this manner. On or about July 11, 1943, petitioner leased a trailer camp site, known as Oak Grove Trailer Park, from S. O. McKnight, *259 and the business was moved to the new site. On January 24, 1944, a bank account with St. Joseph Bank and Trust Company, South Bend, Indiana, was opened in the name of Shrum Trailer Sales. Prior thereto the business had maintained an account with the same bank in the name of Kauffman Trailer Sales. Petitioner was authorized to make withdrawals from this account as "owner" and Lena was likewise authorized as "wife". Lena was recognized by the bank as empowered to draw on the business account. However, most matters with the bank concerning Shrum Trailer Sales were handled by petitioner. At that time there was not executed by petitioner or Lena a form usually requested by the bank in the case of an account opened by a partnership. Such a form was made out later, in 1945 or 1946. Checks used by the business did not refer to it as a partnership. Petitioner's name was printed on the checks; Lena's name was not. Trailers purchased for the business for resale were on occasion financed through the St. Joseph Bank and Trust Company, South Bend, Indiana. Chattel mortgages were given on the trailers and petitioner alone, without Lena, executed and signed such mortgages as an individual. *260 Lena became familiar with various phases of the trailer and trailer park business. She interviewed customers, and on occasion received and acknowledged orders from them. She discussed trailer purchases with representatives of manufacturers. She decorated trailers. She received rents from tenants in the trailer park and listened to their complaints. She was often found in the office of the business. Prior to 1942, she had no experience with the trailer business. She had theretofore worked in a domestic capacity as a housekeeper, and in a glass factory and cedar chest factory. Her education was limited to completion of grade school, and more recently she had completed a public speaking course. From about 1943 until 1947, petitioner hired Austin Tomlinson to help in the operation of the business. Tomlinson closed deals for the sale of trailers; at times was authorized to buy trailers; made deliveries of trailers; helped in the servicing of trailers; and assisted in the trailer park work. In February, 1945, Eldon E. Ebbeskotte, a public accountant, was hired as bookkeeper and accountant for Shrum Trailer Sales. On his advice and that of petitioner's attorney, petitioner and Lena entered *261 into a written partnership agreement. Prior to the execution of this agreement, Ebbeskotte and petitioner and Lena discussed the tax-saving possibilities of the partnership form of doing business. The agreement was dated January 2, 1945, but it was not in fact executed until April 1, 1945. The agreement recited that the parties by verbal agreement had been engaged as partners since January 21, 1943, and were then associated "in the certain business transactions known as Shrum Trailer Sales and Oak Grove Trailer Park", and that the parties now desired to reduce the verbal agreement to writing. The agreement provided that the parties were continuing to associate themselves as partners in that business; that they would bear expenses and share profits equally; and that they had theretofore made a property settlement pertaining to the partnership property in which each had acquired an equal share. The records and books of the trailer business, for 1943, 1944, and 1945, did not contain capital accounts either for Lena or petitioner. Neither did the books show withdrawals by either of them. However, petitioner and Lena each did withdraw funds from the business for personal and sundry expenses *262 and household needs. There was no division of business profits between petitioner and Lena, and in 1946 a single capital account was opened on the books entitled "Investment-Shrum Capital". The income from Shrum Trailer Sales for 1943 and 1944 was originally reported entirely by petitioner in his income tax returns timely filed for those calendar years. In 1946, at the advice of Ebbeskotte, the newly hired bookkeeper and accountant, a series of amended and delinquent income tax returns was filed on the basis that the trailer business had been conducted by petitioner and Lena as a partnership: delinquent partnership returns were filed for the business for the calendar years 1943 and 1944; petitioner's return for 1943 was amended and replaced by a joint return by himself and Lena for that year; and for the calendar year 1944, Lena filed a delinquent individual return, and petitioner accordingly amended his individual return. The original returns filed for the calendar year 1945 were a partnership return, an individual return for petitioner, and an individual return for Lena. No income tax return had been filed by Lena prior to the returns filed in 1946. Respondent determined deficiencies *263 in petitioner's income tax for 1943, 1944, and 1945. The deficiency for 1943 was based in part on disallowance of a deduction for dues to a dealers' association, on the ground that the deduction had already been taken, and the deficiency for 1945 was based in part on disallowance of a deduction for advertising. While the petition contests these disallowances, the issues raised thereby must be deemed abandoned in view of petitioner's failure to introduce any evidence on them and to carry his burden of proof. The remainder of the deficiencies for 1943 and 1945, and the entire deficiency for 1944, resulted from attributing to petitioner the entire income from the trailer and trailer park business. Petitioner and his wife intended in good faith and with a business purpose to join together as partners in the conduct of Shrum Trailer Sales and Oak Grove Trailer Park on and after April 1, 1945. They were not in fact partners in that business prior to April 1, 1945. Opinion RAUM, Judge: Although the matter is not entirely free from doubt, we think that petitioner has shown that he and his wife became partners when they executed the agreement, and that upon this record the partnership *264 is entitled to recognition in accordance with the principles announced and applied in ; ; . However, we do not accept petitioner's contention that a partnership, based upon an oral understanding, existed prior to the execution of the agreement. We are not satisfied that there was in fact any such oral understanding. While it is true that the partnership agreement was dated January 2, 1945, we are convinced on this record that it was conceived and executed at least several months later. In the absence of evidence as to the precise date, it is our best judgment, and we have found, that it was executed on April 1, 1945. The partnership is entitled to recognition for tax purposes after that date, but not prior thereto. As indicated in the findings, the claimed deductions for dues to a dealer's association and for advertising must be disallowed because petitioner has failed to carry his burden of proof. Decision will be entered under Rule 50.